255 S.W.3d 338 (2008)
In the Matter of A.E.B., a Child.
No. 05-06-01536-CV.
Court of Appeals of Texas, Dallas.
April 29, 2008.
Rehearing Overruled June 11, 2008.
*339 Gary A. Udashen, Sorrels, Udashen & Anton, Dallas, for Appellant.
John R. Roach, Sr., Collin County Dist. Atty., Andrea L. Westerfeld, Asst. Dist. Atty.Collin County, for the State.
Before Justices MOSELEY, LANG, and MAZZANT.

OPINION
Opinion by Justice MOSELEY.
A jury found A.E.B. engaged in delinquent conduct by committing attempted sexual assault against the complainant, O.P. The trial court sentenced A.E.B., who was fifteen years old at the time of trial, to a six-year determinate sentence with commitment to the Texas Youth Commission *340 and a possible transfer to the Texas Department of Corrections. The trial court found that A.E.B. used a deadly weapon during the incident. A.E.B. brings eight issues on appeal, including complaints as to: (1) the legal and factual sufficiency of the evidence supporting the jury's finding; and (2) the trial court's denial of his request for a jury instruction on the lesser included offense of assault.
As discussed herein, we conclude the evidence is legally sufficient to support the jury's finding. However, we conclude the trial court erred in denying A.E.B.'s request for a jury instruction on the lesser included offense of assault, and we resolve A.E.B.'s fifth issue in his favor. We reverse the trial court's order of disposition and remand this case to the trial court for further proceedings.

I. FACTUAL BACKGROUND
The complainant, O.P., testified that she was walking in the neighborhood around her apartment complex at about 1:30 p.m. on Sunday, May 28, 2006. She was walking on the top of a hill along Preston Vineyard Drive in Frisco. She heard someone jogging behind her, and then someone grabbed her from behind. Although she could not see the person's face, she thought it might have been a friend playing a joke on her, but she said he was squeezing her "very hard" (she said it was not "friendly") and she was scared. She asked him what he was doing, but he did not answer. He forced both of them to fall to the ground. They lay for a few minutes on their left sides; O.P. struggled against him, and he kept squeezing her and pushing her against the ground. He released her suddenly, and she turned around and saw he was wearing a mask. Then he got up and ran away. O.P. described her attacker as wearing tennis shoes, dark shorts, and a sleeveless top, and said he was carrying a sack or a bag.
The State asked if O.P. noticed "whether he had anything in his hands?" O.P. said she noticed something in his hand and attempted two explanations, but the trial court sustained A.E.B.'s objections to her responses. The State then asked, "You can you describe what you saw and what youwhat it looked like to you?" The following exchange then occurred:
[O.P.]: Yeah. I don't know. It was some kind of dull thing. I don't know, like, just someI don't know, likelike maybelike maybe the back of something, like a square thing. I don't remember. I just saw something in in his hand, soand II assumed it was a knife. I don't know. I just assumed so but I didn't see it.
[A.E.B.'s counsel]: Judge, I'll object as to speculation.
THE COURT: Sustained.
[A.E.B.'s counsel]: Ask the jury to disregard.
THE COURT: The jury shall disregard the final response.
[A.E.B.'s counsel]: Move for a mistrial.
THE COURT: Denied.
When O.P. got up, she saw a pickup on the road. The pickup's driver, Clifford Willoughby, testified he saw two people on the ground; one of them was wearing a ski mask and was on top of a girl. Willoughby yelled, and the masked person ran away. Willoughby saw him take off the mask. Willoughby did not see his face, but said he was wearing the ski mask, tennis shoes, and dark shorts. A passenger in another car, Erin Majongwe, noticed a person running and thought it was suspicious. She described the person as a teenager with a medium build. Majongwe then saw O.P. and Willoughby and stopped to help.
*341 Shortly thereafter, the police were notified of the attacker's description and the direction in which he was running. About ten minutes after the incident was reported, A.E.B. was apprehended in a nearby alley. A police officer testified A.E.B. was out-of-breath, like he had been running, and he was walking away from the direction of the incident. After A.E.B.'s arrest and again in court, Majongwe identified him as the person she saw running. In addition, an arresting officer identified A.E.B. in the courtroom and identified an exhibit as a photograph of A.E.B. taken at the police station just after his arrest; in the photograph, A.E.B. is wearing dark shorts and tennis shoes.
A policeman testified A.E.B. had a "flip phone" style cell phone, either in his hand or clipped to the waistband of his shorts. He was also carrying a pillowcase that contained a ski mask, a "muscle shirt," a black-handled knife with a two-inch blade, an unopened condom, and a comb. A police officer looked in A.E.B.'s bag and saw a "wadded up" ski mask.
After A.E.B. was taken to the police station, the contents of his bag were inventoried. A second arresting officer testified:
Q Okay. And to your recollection, whatwas the knife, the comb, or the condom covered or masked in any way in that bag?
A Yes.
Q And how would you describe the way that they were found in that bag?
A The knife and the condom were separated from the comb. The comb was discovered first. During the courseI knew the comb was in his possession at the time of the incident. During the course ofof the investigation when we were looking for some other weapon that he may have had, that's when I began to look further into the bag and discovered the knife was wrapped up inside of the mask.
Q Okay. And what about the condom?
A I'm sorry?
Q What about the condom?
A The condom as well. The condom fell out as I pulled the knife out.
There was testimony that a condom has a sexual use as a prophylactic, and that A.E.B. referred to the bag as containing his "protection."
A.E.B. did not testify.

II. SUFFICIENCY OF THE EVIDENCE
A. Legal Sufficiency
In his first issue, A.E.B. challenges the legal sufficiency of the evidence supporting the jury's determination of delinquency.
The second amended petition seeking determinate sentence alleged that A.E.B.
engaged in delinquent conduct, to-wit: . . . [he] violated a penal law . . .: Attempted Aggravated Sexual Assault, in that the said child did then and there with the specific intent to commit the offense of Aggravated Sexual Assault of [O.P.], do an act, to-wit: knocked the said [O.P.] to the ground and physically overpowered [her], while wearing a ski mask, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.
And it is further presented . . . that a deadly weapon, to-wit: a knife was used or exhibited during the commission of the aforesaid offense or during immediate flight following the commission of the aforesaid offense, and that the juvenile respondent used or exhibited said deadly weapon or was a party to the *342 aforesaid offense and knew that deadly weapon would be used or exhibited.
The jury was charged on attempted aggravated sexual assault and attempted sexual assault. The jury returned a verdict that A.E.B. engaged in delinquent conduct by committing the lesser offense of attempted sexual assault. A.E.B. appeals.
1. Standard of Review and Applicable Law
Although juvenile proceedings are considered civil proceedings, the actual adjudication of delinquency is based on the criminal standard of proof. See TEX. FAM. CODE ANN. § 54.03(f) (Vernon Supp.2007); In re J.R., 907 S.W.2d 107, 109 (Tex.App.-Austin 1995, no writ). Thus, when reviewing the legal sufficiency of the evidence to support a finding of delinquency, we apply the same standard used to review legal sufficiency claims in criminal cases. See In re M.C., 237 S.W.3d 923, 926 (Tex.App.-Dallas 2007, no pet.); C.D.F. v. State, 852 S.W.2d 281, 284 (Tex.App.-Dallas 1993, no writ). The Fourteenth Amendment's due process clause prohibits a criminal conviction except upon proof sufficient to persuade a rational fact finder of guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Swearingen v. State, 101 S.W.3d 89, 95 (Tex.Crim.App.2003). When reviewing the legal sufficiency of the evidence, we consider all the record evidence in the light most favorable to the jury's verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational jury could have found the accused guilty of all of the elements of the offense beyond a reasonable doubt. Swearingen, 101 S.W.3d at 95 (citing Jackson, 443 U.S. at 319, 99 S.Ct. 2781). Our review encompasses all the evidence, whether properly or improperly admitted. See Marshall v. State, 210 S.W.3d 618, 625 (Tex.Crim.App.2006), cert. denied, ___ U.S. ___, 128 S.Ct. 87, 169 L.Ed.2d 66 (2007). In determining whether evidence is sufficient to convict, we must examine the totality of the circumstances. Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex.Crim.App.2005). We judge the legal sufficiency of the evidence against the elements of the criminal offense as defined by state law. Fuller v. State, 73 S.W.3d 250, 252 (Tex.Crim.App. 2002).
Delinquent conduct is conduct (other than a traffic offense) that "violates a penal law of this state or of the United States punishable by imprisonment or by confinement in jail." TEX. FAM.CODE ANN. § 51.03(a)(1) (Vernon Supp.2007). A person commits the offense of sexual assault of an adult when he intentionally or knowingly: causes the penetration of the anus or sexual organ of another person by any means, without that person's consent; causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor. TEX. PENAL CODE ANN. § 22.011(a)(1)(A)-(C) (Vernon Supp.2007). As pertinent here, a sexual assault is without the consent of the other person if the actor compels the other person to submit or participate by the use of physical force or violence. Id. § 22.011(b)(1) (Vernon Supp.2007).
A person commits criminal attempt if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense. Id. § 15.01(a) (Vernon 2003); see Gibbons v. State, 634 S.W.2d 700, 705 (Tex. Crim.App. [Panel Op.] 1982). "With specific intent to commit an offense" means that the accused must intend to bring *343 about the desired result. Graves v. State, 782 S.W.2d 5, 6 (Tex.App.-Dallas 1989, pet. ref'd). Intent may be inferred from the accused's actions, words, and conduct as well as surrounding circumstances. LaPoint v. State, 750 S.W.2d 180, 182 (Tex. Crim.App.1986), disapproved of on other grounds by Warner v. State, 245 S.W.3d 458, 463-64 (Tex.Crim.App.2008); In re J.B.M., 157 S.W.3d 823, 826 (Tex.App.-Fort Worth 2005, no pet.).
2. Discussion
a. Identity of the Attacker
First, A.E.B. argues the evidence is legally insufficient to establish he was the person who committed the acts alleged. He argues that O.P. was unable to identify the person who attacked her, and the only witnesses who identified him were Majongwe and the arresting officers.
There was testimony that A.E.B.'s appearance and clothing met the description of the attacker provided by O.P. and Willoughby, as well as the description of the person running away provided by Majongwe. After the arrest and again at trial, Majongwe identified A.E.B. as the person she saw running from the area where the attack took place. In addition, an arresting officer identified A.E.B. in the courtroom and identified an exhibit as a photograph of A.E.B. taken at the police station just after his arrest; in the photograph, A.E.B. is wearing dark shorts and tennis shoes. Also, A.E.B.'s bag contained a ski mask and a "muscle shirt."
Identification based upon an individual's build and clothing, when corroborated, can be legally sufficient. Sosa v. State, 177 S.W.3d 227, 230 (Tex.App.-Houston [1st Dist.] 2005, no pet.); Hutchinson v. State, 42 S.W.3d 336, 342 (Tex.App.-Texarkana 2001), aff'd, 86 S.W.3d 636 (Tex.Crim.App. 2002). We conclude a rational jury could have found beyond a reasonable doubt that A.E.B. was the person who attacked O.P. See Swearingen, 101 S.W.3d at 95. We overrule A.E.B.'s first issue to this extent.
b. Intent to Commit Sexual Assault
Next, A.E.B. argues the evidence is legally insufficient "to prove the sexual element of the offense." This argument focuses on whether, based on the evidence and reasonable inferences therefrom, a rational jury could have found beyond a reasonable doubt that A.E.B. intended to commit sexual assault. See id. (citing Jackson, 443 U.S. at 319, 99 S.Ct. 2781); TEX. PENAL CODE ANN. § 22.011(a)(1)(A)-(C).
As discussed above, there is evidence that, while wearing a ski mask, A.E.B. grabbed O.P. from behind and held her tightly; he continued to do so after they fell to the ground; when a passer-by saw them and yelled, he let go and ran away; he had something "dull" and "square" in his hand; and when he was apprehended he had a "flip-phone" style cellular phone and a bag containing, among other things, an unopened condom wrapped inside a ski mask.
A.E.B. argues the evidence does not support a finding that he intended to commit sexual assault. The State argues that "the defendant need not make any sexual comments or remove his or the victim's clothing to be convicted of attempted sexual assault, so long as there is some evidence from which the jury can infer he intended to sexually assault the victim." The State also contends the jury "could infer [A.E.B.'s] sexual intent from his carrying a condom along with a mask and knife." Thus, it is possession of the condom  along with other items  that the State asserts supports the inference that A.E.B. intended to sexually assault O.P.
*344 The State agrees that carrying a condom does not automatically mean a person intends to immediately have sexual intercourse. However, citing Howe v. State, No. 06-03-00040-CR, 2004 WL 502620 (Tex.App.-Texarkana Mar. 16, 2004, no pet.) (mem. op., not designated for publication), the State argues that carrying a condom may nonetheless be relevant evidence of intent to commit sexual assault. We find Howe distinguishable from the present case.
There, the appellant Howe was convicted of aggravated kidnapping of a two-year-old girl. He confessed to taking the child and to sexually assaulting her later. In his confession, Howe also stated he had seen the victim and one of her friends the day before the kidnapping, and that the next morning he woke up and began thinking about the victim and her friend. However, he argued that the State could not prove that at the time of the kidnapping he intended to commit sexual assault. On appeal Howe complained of the trial court's admission of evidence that he had purchased a condom the night before the kidnapping. Id. at *2. The Texarkana court overruled Howe's issue, holding that the evidence of Howe's condom purchase tended to make the existence of a material fact  that Howe had planned to sexually assault his victim  more probable than it would be without the evidence. Id.
However, the holding in Howe related to the timing of his purchase of the condom, not his mere possession of one. Evidence that Howe saw his victim the day before, bought a condom that night, and kidnapped and sexually assaulted the child the next day was probative of his intent at the time of the kidnapping, and would be legally sufficient to support a finding that he kidnapped his victim with the intent to commit sexual assault. In the case before us, however, there is no evidence from which the jury could have inferred that A.E.B. acquired the condom as part of a plan to commit sexual assault.
We have found no case holding that mere possession of a condom is evidence of intent to commit sexual assault. A.E.B. argues the fact he had a condom in his bag is not enough to connect the physical confrontation to a sexual assault. We agree. However, here we have evidence of more than A.E.B.'s mere possession of a condom.
There is evidence A.E.B. was wearing the mask during the assault, and that when he was arrested shortly after fleeing the scene the ski mask was found inside the bag, with the condom wrapped inside it. This evidence supports the inferences that: (1) at the time A.E.B. was wearing the mask, i.e., during the attack, the condom was outside the bag; and (2) after A.E.B. took off the mask he placed the condom in it and placed both in the bag. Additionally, O.P. testified she saw something in the attacker's hand, which she described as "dull" and "square." Although the jury was instructed to disregard O.P.'s testimony that she assumed the object was a knife, the jury could consider her testimony that A.E.B. was holding a dull, square-shaped object in his hand during the attack. Both the unopened condom and the "flip phone" style cell phone fit this description. However, viewing the evidence in the light most favorable to the jury's verdict, we conclude a rational jury could have found that the item in A.E.B.'s hand during the attack was the unopened condom, and thus that he acted with the intent to immediately bring about sexual penetration, which is an act constituting the offense of sexual assault. See TEX. PENAL CODE ANN. § 22.011(a)(1)(A), (B). This is circumstantial evidence that A.E.B.'s physical altercation with O.P. was an attempt to commit sexual assault. See id. § 15.01(a) (criminal attempt requires specific intent to commit *345 an offense, that is, to being about the desired result). Accordingly, we conclude the evidence is legally sufficient to support the jury's finding of the intent element of attempted sexual assault. Swearingen, 101 S.W.3d at 95 (citing Jackson, 443 U.S. at 319, 99 S.Ct. 2781). We resolve A.E.B.'s first issue against him.
B. Factual Sufficiency
In his second issue, A.E.B. contends the evidence is factually insufficient to sustain the verdict. The Texas Rules of Civil Procedure govern a juvenile proceeding except when in conflict with a provision in Title 3 of the family code. TEX. FAM. CODE ANN. § 51.17(a) (Vernon Supp.2007). Texas Rule of Civil Procedure 324(b)(2) requires a motion for new trial to be filed before complaining on appeal of the factual insufficiency of the evidence to support a jury finding. TEX.R. CIV. P. 324(b)(2). Juveniles are not exempt from filing a motion for new trial before bringing a factual sufficiency issue on appeal. In re M.R., 858 S.W.2d 365, 366 (Tex.1993) (per curiam). A.E.B. did not file a motion for new trial. Thus, A.E.B. has not preserved his factual sufficiency complaint for review, and we need not address his second issue.

III. REQUESTED LESSER INCLUDED OFFENSE INSTRUCTION
Before the charge was given to the jury, A.E.B. requested that the jury be charged on the lesser included offense of assault. The State opposed A.E.B.'s request, and the court refused to instruct the jury on assault. In his fifth issue, A.E.B. argues the trial court erred in denying his request for a jury instruction on the lesser included offense of assault.
A. Applicable Law and Standard of Review
In determining whether a jury should be instructed on a lesser included offense, we apply a two-step test. First, we determine whether the requested offense actually is a lesser included offense of the offense charged, as defined by article 37.09 of the code of criminal procedure. Hall v. State, 225 S.W.3d 524, 528 (Tex. Crim.App.2007). If another lesser included offense of the charged offense is contained in the jury charge, but not originally charged, we also determine whether the requested offense is actually a lesser included offense of the offense contained in the charge. Guzman v. State, 188 S.W.3d 185, 191 & n. 9 (Tex.Crim.App.2006).
An offense is a lesser included offense if: (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense. TEX.CODE CRIM. PROC. ANN. art. 37.09(1)-(4) (Vernon 2006).
To perform the first step of the analysis, we compare the elements of the greater offense, as the State pleaded it in the indictment, and of any lesser included offense charged in the jury charge, with the elements in the statute that defines the lesser offense. Hall, 225 S.W.3d at 525, 526; Guzman, 188 S.W.3d at 188-89, 191 n. 9. This first step of the analysis is a matter of law. Hall, 225 S.W.3d at 535. It does not depend on the evidence produced at trial. Id.
If the first step of the analysis results in an affirmative answer, we next determine *346 whether, at the close of the case, there is some evidence that would support a rational finding that the defendant is guilty only of the lesser included offense. Guzman, 188 S.W.3d at 188-89. In this step of the analysis, anything more than a scintilla of evidence may be sufficient to entitle a defendant to the lesser charge. Hall, 225 S.W.3d at 536.
There are two ways in which the evidence may indicate that a defendant is guilty only of the lesser offense. Saunders v. State, 840 S.W.2d 390, 391 (Tex. Crim.App.1992) (per curiam). First, there may be evidence that refutes or negates other evidence establishing the greater offense. Id. Second, the evidence presented may be subject to different interpretations, and one of the interpretations negates or rebuts an element of the greater offense. Schweinle v. State, 915 S.W.2d 17, 19 (Tex.Crim.App. 1996) (per curiam); Saunders, 840 S.W.2d at 392.
B. Discussion
The second amended petition alleged A.E.B. engaged in delinquent conduct by attempting to commit aggravated sexual assault. The jury charge also included the lesser included offense of attempted sexual assault. As the elements of these two offenses are the same as they relate to this case (except for the aggravating element), for convenience we will compare the elements of attempted sexual assault with the elements of assault.[1]
The elements of attempted sexual assault as defined by statute and set forth in the jury charge are:
(1) A.E.B.;
(2) with specific intent to commit sexual assault;
(3) did an act, to wit: knocked O.P. to the ground and physically overpowered her, while wearing a ski mask;
(4) which amounted to more than mere preparation that tended but failed to effect the commission of the offense of sexual assault.
See TEX. PENAL CODE ANN. §§ 15.01(a), 22.011(a)(1)(A), (B).[2] As germane to this case, the elements of assault are:

*347 (1) A.E.B.;
(2) either:
(a) intentionally, knowingly, or recklessly caused bodily injury to O.P.;
(b) intentionally or knowingly threatened O.P. with imminent bodily injury; or
(c) intentionally or knowingly caused physical contact with O.P. when he knew or should reasonably have believed that O.P. would have regarded the contact as offensive or provocative.
See id. § 22.01(a)(1)-(3) (Vernon Supp. 2007).
Comparing the elements of these two offenses, it is apparent that the elements of attempted sexual assault as set forth in the jury charge include within them the statutory elements of assault. The conduct element of attempted sexual assault alleged  knocking O.P. to the ground and physically overpowering her  includes the conduct element of assault  causing physical contact with O.P. when he knew or should reasonably have believed that O.P. would have regarded the contact as offensive or provocative. See id. § 22.01(a)(3). In addition, to prove attempted sexual assault, the State would have to prove that A.E.B. acted with specific intent. To prove an assault under section 22.01(a)(3), the State would have to prove A.E.B. acted intentionally or knowingly. A knowing mens rea is a less culpable state of mind than an intentional mens rea. See Guzman, 188 S.W.3d at 190; Rocha v. State, 648 S.W.2d 298, 302 (Tex.Crim.App.1982) (op. on reh'g) (en banc). Thus, proof of assault as set out in penal code section 22.01(a)(3) is established by proof of the same or less than all the facts required to establish the commission of attempted sexual assault as set forth in the jury charge.[3] We conclude that, under the circumstances before us, assault is a lesser included offense of attempted sexual assault. See TEX.CODE CRIM. PROC. ANN. art. 37.09(1).
Turning to the second step of the analysis, we consider whether there is evidence in the record that would permit a jury to rationally find that if A.E.B. is guilty, he is guilty only of assault, not attempted sexual assault. We consider whether there is any evidence in the record refuting or negating other evidence establishing the greater offenses, or evidence that is subject to different interpretations, one of which negates or rebuts an element of the greater. See Schweinle, 915 S.W.2d at 19; Saunders, 840 S.W.2d at 392.
O.P. testified she saw something in her attacker's hand, which she described as "dull" and "square." We noted above that this evidence supports two reasonable inferences: it was an unopened condom or a "flip phone" style cell phone. We concluded above that the jury was entitled to *348 reasonably infer that the object was the unopened condom, which supports the intent element of attempted sexual assault. But another reasonable inference from the evidence  that A.E.B. had a cell phone in his hand  negates or rebuts the element of A.E.B.'s specific intent to commit a sexual assault offense of O.P. by penetration. See TEX. PENAL CODE ANN. §§ 15.01(a), 22.011(a)(1)(A), 22.021(a)(1)(A)(i). See also Schweinle, 915 S.W.2d at 19-20 (in addition to kidnapping charge, jury should have been instructed on lesser included offense of false imprisonment when evidence as to whether complainant was held "in a place where she was not likely to be found" was subject to two different interpretations, one of which negated or rebutted abduction element of greater offense); Smith v. State, 135 S.W.3d 259, 265-66 (Tex.App.-Texarkana 2004, no pet.) (charge on lesser included offense of assault should have been given when evidence showed assault conduct of threat of imminent bodily injury or physical contact but no evidence of attempted sexual assault by vaginal penetration as indicted).
This is because the alternative interpretation of the evidence  that the object in A.E.B.'s hand during the attack was his cell phone  leaves the element of intent to commit a sexual assault without any proof. Only the presence of the unopened condom in A.E.B.'s hand, not in his sack or elsewhere on his person, supports the inference that A.E.B. intended to commit sexual assault. There is no evidence A.E.B. said anything to O.P. of a sexual nature. There is no evidence he tried to remove, unfasten, or shift her clothing or his clothing, or that he attempted to fondle her over her clothing, or that he attempted to put his hands under her clothing. There is no evidence he attempted to touch O.P. or himself in a sexually suggestive manner. Cf. In re J.B.M., 157 S.W.3d at 826 (evidence appellant pulled complainant to him, kissing and touching her, pulled her to ground, restrained her, reached under her shirt, caused her legs to spread, and complainant testified she thought appellant was trying to have sex with her legally sufficient to support conviction of attempted sexual assault). There is no evidence he engaged or attempted to engage in any bodily motions, such as kissing, thrusting, or stroking, that could be considered sexual in nature.[4] There is no evidence that A.E.B. was sexually aroused. Cf. Hackbarth v. State, 617 S.W.2d 944, 946 (Tex. Crim.App.1981) (evidence appellant grabbed complainant, attempted to remove her clothing, and exposed his penis legally sufficient to support conviction for attempted rape). There is no evidence the assault took place in a location with a history of sexual assaults, or that A.E.B. tried to move O.P. to a location more conducive to sexual assault. Cf. Koster v. State, 773 S.W.2d 763, 763 (Tex.App.-Beaumont 1989, pet. ref'd) (evidence appellant grabbed complainant, "shoved her to the floor near the master bedroom door," and fled when boyfriend appeared legally sufficient *349 to support conviction for burglary of habitation with intent to commit sexual assault). Although O.P. understandably was scared, there is no testimony that she thought her attacker was attempting to engage in sexual contact; nor is there any "totality of the circumstances" or "presentsense impression" testimony from any witness to the effect that they thought the assault taking place was part of an attempted sexual assault. Cf. Clay v. State, 157 Tex.Crim. 32, 246 S.W.2d 180, 180 (1952) (evidence from doctor that complainant was "highly distraught" and clothes were torn and from family members corroborating doctor's testimony and as to bruises on complainant's throat supported conviction for assault with intent to rape).
The State also argues there was some tall grass near where A.E.B. assaulted O.P., which would have given A.E.B. cover to commit sexual assault. Specifically, O.P. testified she was "[o]ne or two steps probably" from the high grass when she fell to the ground and from the location where she was knocked to the ground, it was possible to have rolled into the high grass. The presence of tall grass nearby might be probative of A.E.B.'s intent if it were accompanied by some evidence that he tried to move O.P. there. However, there is no such evidence. Moreover, the area where the assault occurred was not "out of sight" as the State argues because, from the road, Willoughby observed O.P. and the attacker on the ground. Cf. Allen v. State, 156 Tex.Crim. 620, 245 S.W.2d 707, 707-08 (1952) (evidence appellant invaded complainant's bedroom at 2:30 a.m., lay on top of her, waking her up, and told her not to say anything and she would not get hurt supported conviction for nighttime burglary of private residence with intent to commit rape). See also Vodochodsky, 158 S.W.3d at 509.
As a result, the alternative interpretation of the evidence  that the object in A.E.B.'s hand during the attack was his cell phone  negates the only evidence that A.E.B. acted with intent to commit sexual assault. Thus, there is some evidence that would permit a rational jury to find that A.E.B. was guilty only of the lesser offense  assault.
The State relies on Hampton v. State, 109 S.W.3d 437 (Tex.Crim.App.2003), to support its argument that an instruction on lesser included offenses is required only where affirmative evidence is put forth and that nothing affirmatively supports A.E.B.'s argument that he did not act with the intent to sexually assault O.P. In Hampton, the State argued submission of a lesser included offense of sexual assault was proper after testimony that a knife, an aggravating element, was never recovered. The State argued "such affirmative evidence regarding the absence of evidence" allowed the jury to infer a knife was not used during the assault. Id. at 440. But there the victim testified that a knife was used. Id. at 441. The court of criminal appeals stated the standard as follows: "[I]n determining whether the second prong has been met, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." Id. at 441. The court of criminal appeals rejected the State's argument, noting that the failure to find a knife was not affirmative evidence that no knife was used in the assault, nor was such failure inconsistent or in conflict with direct testimony as to use of a knife. Id.
Here, "some evidence directly germane" to the lesser included offense of assault is the evidence concerning the object in *350 A.E.B.'s hand during the attack. As discussed above, the jury was entitled to believe the object was the unopened condom, which supports  and is the only support for the jury's finding as to A.E.B.'s intent to commit sexual assault. However, the jury was equally entitled to believe the object was the cell phone, which would negate the offense of attempted sexual assault because it would leave the intent element of that offense unsupported by any evidence. We agree with A.E.B. that the trial court erred in denying his request for a jury instruction on the lesser included offense of assault.
Because A.E.B. timely objected to the trial court's error with regard to the jury charge, we determine harm by conducting an Almanza harm analysis. See Saunders, 840 S.W.2d at 392. See also Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g). In that analysis, some harm is required for reversible error. Almanza, 686 S.W.2d at 171. "Some" harm in an Almanza analysis means "any" harm; thus, if the charging error causes any actual harm to the appellant, as opposed to "theoretical harm," then the error requires a reversal of the judgment of the trial court. Arline v. State, 721 S.W.2d 348, 351 (Tex.Crim. App.1986); Almanza, 686 S.W.2d at 171.
Attempted sexual assault is punished as a third degree felony. See TEX. PENAL CODE ANN. §§ 15.01(d) (attempt offense is "one category lower than the offense attempted"); 22.011(f) (sexual assault offense is a second degree felony, with exceptions not applicable here). The punishment for a third degree felony offense is imprisonment for any term of not more than ten years or less than two years, and, in addition to imprisonment, a possible fine not exceeding $10,000. See id. § 12.34 (Vernon 2003).
In contrast, the offense of assault under penal code section 22.01(a)(3) is a Class C misdemeanor. See id. § 22.01(c). The punishment for a Class C misdemeanor is a fine not exceeding $500. See id. § 12.23 (Vernon 2003). In addition, under the family code, A.E.B. would be punished only as a juvenile for misdemeanor assault because there is no provision for determinate sentencing with possible transfer to the Texas Department of Criminal Justice for misdemeanor offenses. See TEX. FAM. CODE ANN. §§ 53.045(a)(14) (Vernon Supp. 2007), 54.04(d)(3)(C) (Vernon Supp.2007); TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(1)(E) (Vernon Supp.2007). Thus, we conclude the record shows some harm to A.E.B. resulting from the trial court's denial of his request to instruct the jury on assault.
Having concluded the trial court erred by denying A.E.B.'s request for a jury instruction on the lesser included offense of assault and he was harmed by such error, we resolve A.E.B.'s fifth issue in his favor.

IV. CONCLUSION
Having resolved A.E.B.'s first issue against him and his fifth issue in his favor, we need not address A.E.B.'s third, fourth, sixth, and seventh issues.[5]See TEX.R.APP. P. 47.1. We reverse the trial court's order of disposition and remand this case to the trial court for further proceedings.
NOTES
[1] As they relate to this case, the elements of attempted sexual assault and attempted aggravated sexual assault are identical, see TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i)-(iii) (Vernon Supp.2007), except for the aggravating element. See id. § 22.021(a)(2)(A)(iv) (actor uses or exhibits a deadly weapon in the course of same criminal episode), (c) (actor compelled other person to submit or participate by use of physical force or violence, referring to section 22.011(b)(1)).
[2] The application paragraphs read as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 28th day of May, 2006, in Collin County, Texas, the juvenile-respondent, [A.E.B.], did then and there with the specific intent to commit the offense of Aggravated Sexual Assault of [O.P.], did an act, to-wit: knocked the said [O.P.] to the ground and physically overpowered her, while wearing a ski mask, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended, then you must find that [A.E.B.] did thereby commit delinquent conduct, and you are instructed to say by your verdict that [A.E.B.] did engage in delinquent conduct as alleged in the Second Amended Petition Seeking Determinate Sentence.
If you do not so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the juvenile-respondent of the delinquent conduct of Attempted Aggravated Sexual Assault charged against him in the petition and answer "We do not."
If your answer is "we do not," you will next consider whether the juvenile engaged in delinquent conduct by committing the lesser offense of Attempted Sexual Assault. If you find from the evidence beyond a reasonable doubt that on or about the 28th day of May, 2006, in Collin County, Texas, the juvenile-respondent, [A.E.B.], did then and there with the specific intent to commit the offense of Sexual Assault of [O.P.], did an act, to-wit: knocked the said [O.P.] to the ground and physically overpowered her, while wearing a ski mask, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended, then you must find that [A.E.B.] did thereby commit delinquent conduct, and you are instructed to say by your verdict that [A.E.B.] did engage in the lesser delinquent conduct of Attempted Sexual Assault.
[3] The State relies on an unpublished case, Williamson v. State, No. 05-04-00738-CR, 2006 WL 894873 (Tex.App.-Dallas Apr. 7, 2006, pet. ref'd) (not designated for publication), to support its argument that the elements of aggravated sexual assault and assault are not functionally the same or lesser. Unlike in that case, the second amended petition here alleged an attempted offense, thus implicating different elements.
[4] The State relies on two unpublished opinions: Alexander v. State, No. 05-04-01537-CR, 2006 WL 14269 (Tex.App.-Dallas Jan. 4, 2006, pet. ref'd) (not designated for publication), and Roy v. State, No. 05-00-01814, 2002 WL 124278 (Tex.App.-Dallas Jan. 31, 2002, no pet.) (not designated for publication). However, in Alexander, 2006 WL 14269, at *3-4, the complainant testified the appellant slapped her buttocks, exposed his sexual organ to her, and "pressed himself against her"; he admitted he unzipped her dress and fondled her breast. In Roy, 2002 WL 124278, at *2, the complainant testified the appellant grabbed her from behind in a women's restroom, covered her mouth, pulled her towards a stall, and "pulled at her pants from the side as she tried to keep them on." Those cases are factually distinguishable because, except for grabbing O.P. from behind, there is no such testimony here.
[5] A.E.B. also contends the jury instructions in the guilt/innocence phase failed to require a unanimous verdict in contravention of the United States and Texas Constitutions and the code of criminal procedure (issues 3 and 4); the trial court erred in instructing the jury that intent may be inferred by acts done or words spoken (issue 6); and the trial court erred in making a deadly weapon finding (issue 7).